Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On 28 November 1996 an employment relationship existed between plaintiff and defendant-employer.
3. On 28 November 1996 Zenith Insurance Company was the carrier on the risk.
4. The plaintiffs average weekly wage is to be determined.
5. The following Industrial Commission Forms were admitted into evidence as Stipulated Exhibit #2: Forms 18, 19, 22, 28 rev. dated 22 January 1997, 28 rev. dated 28 January 1997, 28 rev. dated 29 January 1997, 28 rev. dated 5 February 1997, an undated 28 rev. referencing plaintiffs hours during the week of 4 February 1997 through 10 February 1997, 28 rev. dated 18 February 1997, 28 rev. dated 5 March 1997, 28 rev. dated 10 March 1997, 28 rev. dated 10 April 1997, 28 rev. dated 21 April 1997, 28 rev. dated 24 March 1997, and Form 33 Amended dated 5 October 1999.
6. Plaintiffs medical records were admitted into evidence as Stipulated Exhibit #3.
7. A print-out of payments made to plaintiff was admitted into evidence as Stipulated Exhibit #4.
8. Plaintiff received temporary total disability from 23 December 1996 through 13 January 1997, and 5 March 1997 through 17 April 1997, totaling $1,235.18. Plaintiff received temporary partial disability from 17 January 1997 to 17 February 1997 at various rates totaling $985.72. Benefits were calculated based on a $407.20 average weekly wage.
9. The issues before the Deputy Commissioner in this case were set forth in the Pre-Trial Agreement. The only issue raised by defendants on appeal was whether plaintiff is entitled to an Order for payment of future medical compensation pursuant to N.C. Gen. Stat. 97-25.1.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On 28 November 1996 plaintiff was a fifty-three year old male employed by defendant-employer as a carpenter. Plaintiff worked in this capacity for approximately twenty-one years.
2. Plaintiff sustained a compensable injury arising out of and in the course of his employment with defendant-employer on 28 November 1996 when he injured his back while moving a two hundred pound table saw. Defendants did not complete a Form 60 or Form 21 to admit the compensability of plaintiffs injury.
3. Plaintiff originally received treatment from Hart Industrial Clinic. A December 1996 MRI revealed a broad annular bulge at L4-5 and L5-S1 with facet arthropathy and a right L3-4 bulging disk. Plaintiff was referred to Dr. Mark Marchese, a neurosurgeon.
4. Dr. Marchese suspected a herniated disk at L4-5 with a free fragment and recommended surgery. Defendants sent plaintiff to Dr. William Sims, another neurosurgeon, who only recommended surgery if conservative treatment of epidurals was unsuccessful. At the time plaintiff saw Dr. Andrea Stutesman on 20 February 1997, plaintiff had not received any epidurals.
5. Dr. Andrea Stutesman, a physical medicine and rehabilitation specialist, treated plaintiff from February 1997 through 24 May 1999. At plaintiffs 20 February 1997 visit, an EMG showed a right L-5 radiculopathy with evidence of reinnervation. Plaintiff received an epidural injection and physical therapy and had improved by his 19 March 1997 visit to Dr. Stutesman. However, plaintiffs pain had increased again by his 19 April 1997 visit to Dr. Stutesman.
6. On 15 May 1997, Dr. Stutesman prescribed a TENS unit and released plaintiff from her care as having reached maximum medical improvement and rated plaintiff with a five percent disability to his back. However, later Dr. Stutesman ordered a follow-up MRI to determine whether plaintiffs disk status had changed. This 16 July 1997 MRI showed a possible disk herniation at L4-5 with a migrated fragment.
7. Plaintiff continued to treat with Dr. Stutesman and receive medications. At plaintiffs last visit in May 1999, plaintiff had considerable right great toe numbness. The pain medications help, but without them, plaintiff experiences pain in his right hip and down to the right lateral calf and top of his right foot. Dr. Stutesman recommended another EMG and MRI to check for changes but defendants did not approve these tests.
8. Except for the brief periods of time plaintiff received temporary total disability or temporary partial disability, plaintiff continued working full-time while in pain and undergoing treatment. Plaintiff has continued to take pain medication in order to work.
9. Plaintiff saw Dr. Maher Habashi, an orthopedic surgeon, for a second opinion rating on 4 November 1999. Examination revealed a limited range of motion, tenderness over plaintiffs sacroiliac joint, some muscle atrophy in his right thigh, positive straight leg raising, numbness on the lateral side of plaintiffs right calf and big toe, and weak extension of his right big toe. Dr. Habashi agreed with the prior diagnosis of ruptured disk at L4-5, lumbar radiculitis on the right side with inflammation of the nerve roots. Plaintiffs symptoms are consistent with this diagnosis. Dr. Habashi recommended surgery because of the nerve root compression caused by the herniated disk.
10. Dr. Habashi did not recommend further testing and rated plaintiff with a twelve percent permanent partial disability to his back.
11. Although plaintiff is currently at maximum medical improvement, the greater weight of the evidence is that he will need additional treatment and medications, which may include surgery. Plaintiffs MRI and EMG results support surgery if plaintiff decides to pursue that option. Plaintiff also has a long-term need for medications, which requires medical follow up and monitoring, as well as liver function studies at least once a year to monitor the long term use of anti-inflammatories for his pain.
12. During Dr. Stutesmans deposition, she increased plaintiffs permanent partial disability rating from the original five percent to between five percent and ten percent and finally ten percent upon re-examination. Dr. Stutesmans opinion was based on the fact that plaintiff continued to experience pain and his symptoms increased after Dr. Stutesman gave her rating.
13. The greater weight of the medical evidence is that another MRI or EMG would not be useful unless plaintiff chooses to pursue surgery or his symptoms dramatically worsen. Surgery is a viable option given the herniated disk and possible free-floating fragment. Even if plaintiff chooses not to pursue surgery, he is in need of further medical treatment and pain medication.
14. As calculated from the Form 22 Wage Chart submitted by defendants, plaintiffs average weekly wage is $557.20, resulting in a compensation rate of $371.49. The original average weekly wage of $407.20 on which plaintiffs temporary total disability and temporary partial disability was computed is incorrect.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 28 November 1996, plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of this 28 November 1996 compensable injury, plaintiff is entitled to an average of eleven percent permanent partial disability to his back, or 33 weeks at his compensation rate of $371.49. The Full Commission places less weight on the original 1997 five percent rating from Dr. Stutesman than the rating given during the March 2000 deposition.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from plaintiffs compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiffs disability. Defendants are not required at this time, based on plaintiffs current condition, to provide an additional MRI and EMG. N.C. Gen. Stat. 97-25.
4. Plaintiff has a substantial risk of the necessity of future medical compensation and is entitled to an Order pursuant to N.C. Gen. Stat. 97-25.1.
5. Plaintiff is entitled to additional temporary total disability and temporary partial disability benefits due to the incorrect original computation. Plaintiff is entitled to the difference between the incorrect compensation rate and the correct compensation rate for those weeks he received benefits. N.C. Gen. Stat. 97-29, 97-30.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorneys fee herein approved, defendants shall pay to plaintiff $371.49 per week for 33 weeks for his eleven percent permanent partial disability to his back.
2. Subject to a reasonable attorneys fee herein approved, defendants shall pay to plaintiff the difference between his correct compensation rate of $371.49 per week and the incorrect compensation rate of $271.46 per week for the weeks plaintiff previously received benefits. These amounts have accrued and shall be payable in a lump sum.
3. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 and 2 of this Award is approved for plaintiffs counsel and shall be deducted from those sums due plaintiff and payable directly to plaintiffs counsel.
4. Defendants shall pay medical expenses incurred by plaintiff as a result of his compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or lessen plaintiffs disability, when bills for the same have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedures.
5. Defendants shall pay the cost due this Commission.
This the ___ day of May 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb